# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Owners Insurance Company, ) | Civil Action No. 2:17-cv-2215-RMG |
| ) | |
| Plaintiff, ) | |
| ) | **ORDER AND OPINION** |
| v. ) | |
| ) | |
| Cruz Accessories a/k/a H&C Corp., and ) | |
| Michael Summer, ) | |
| ) | |
| Defendants. ) | |

This matter comes before the Court on Plaintiff's motion for summary judgment (Dkt. No. 14). For the reasons explained herein, the Court grants Plaintiffs' motion.

**I.  Background**

This case involves a commercial general liability (CGL) insurance coverage dispute between Plaintiff Owners Insurance Company ("Plaintiff" or "Owners Insurance") and Defendants Cruz Accessories a/k/a H&C Corp. and Michael Summer ("Defendants"). Owners Insurance issued a CGL policy to Defendants which was active until at least May 1, 2017. (Dkt. No. 24-2 at 3.) In relevant part, the CGL policy provided for the following coverage:

1.  **Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

    […]

2.  **Exclusions**

    This insurance does not apply to "personal injury" or "advertising injury":

    […]

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

> Arising out of the infringement of copyright, patent, "trademark", trade secret or other intellectual property rights.
>
> However, this exclusion does not apply to infringement in your "advertisement" of copyright, "trade dress" or slogan.

(Dkt. Nos. 24-1 at 31 – 32; 24-2 at 28 – 29.) The CGL's definitions section further explains:

3. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

    b. Regarding web-sites, only that part of a website that is about your goods, products or services for the purpose of attracting customers or supporters is considered an advertisement.

4. "Advertising injury" means injury arising out of one or more of the following offenses:

    [...]

    c. The use of another's advertising idea in your "advertisement"; or

    d. Infringing upon another's copyright, "trade dress" or slogan in your "advertisement".

(Dkt. Nos. 24-1 at 39; 24-2 at 36.)

On August 18, 2016, a Complaint was filed in the United States District Court for the District of New Jersey against Defendants by World End Imports, Inc. (the "Underlying Case"). The case is captioned *World End Imports, Inc. v. Michael Summer and Cruz Accessories a/k/a H&C Corp.*, No.: 1:16-cv-05060-HLH-JS. (Dkt. No. 8-1.) The Complaint in the Underlying Case, attached with the Defendants' prior motion to dismiss, alleged that Defendants infringed on World End Imports' copyrights by copying, distributing, displaying, selling and reproducing jewelry designs owned by World End Imports. (Dkt. No. 8-1 at ¶ 16 – 26.) In addition to displaying and

selling the allegedly infringing designs at tradeshows and wholesale outlets, Defendants allegedly sold the infringing jewelry on their website. (Dkt. No. 8-1 at ¶ 26.)

Defendants informed Owners Insurance of the lawsuit no later than December 15, 2016, and by January 6, 2017, Owners Insurance provided counsel to defend Defendants in the underlying action. (Dkt. Nos. 20-1, 21 at 8.) There is some dispute in the record, but the Parties agree that by no later than November 7, 2017,[1] Plaintiffs emailed Defendants a letter stating that the defense by Owners Insurance "is being provided pursuant to a reservation of rights...." (Dkt. No. 20-3 at 1.) The reservation of rights details four reasons for why the CGL policy allegedly did not cover the Underlying Action, including that Plaintiff "do[es] not believe that an 'advertising injury'...has been alleged." (Dkt. No. 20-3 at 6.) The letter also states that "exclusion[] (i) ...appl[ies] to the loss and may serve as a bar to this claim." (*Id.*) While this motion was pending, the Underlying Case settled.[2]

Owners Insurance seeks a declaration that the CGL does not provide coverage for the Underlying Case and it is not obligated to defend and/or indemnify Defendants in the underlying action. (Dkt. No. 5 at ¶¶ 19 – 21.) Owners Insurance filed a motion for summary judgment, and Defendants filed a response. (Dkt. Nos. 14, 21.)

II. **Legal Standard**

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying

---

[1] Plaintiffs allege the letter was sent on or about August 18, 2017.

[2] Docket No. 54 of the Underlying Case. The Court takes judicial notice of the dockets of the Underlying Case. *See Colonial Penn Ins. Co. v. Coil*, 887 F. 2d 1236, 1239 (4th Cir. 1989) (federal courts may take judicial notice of proceedings in other courts if those proceedings have a direct relation to matters at issue).

the portions of the "pleadings, depositions, answers to interrogatories, any admissions on file, together with the affidavits, if any, which show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court will construe all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The existence of a mere scintilla of evidence in support of the non-moving party's position is insufficient to withstand a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, an issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-movant. *Id.* at 257.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

III. <u>Discussion</u>

A. **Evidence and Timing of Motion for Summary Judgment**

In the first instance, Defendants argue that Plaintiff's motion for summary judgment is premature because it comes prior to any discovery. However, the motion here is properly before the Court. While summary judgment is generally "appropriate only after adequate time for discovery," it is not required where discovery will not provide any unavailable facts essential to the opposition and the issue is purely a matter of law. *See Boyd v. Guiterrez*, 214 F. App'x 322, 323 (4th Cir. 2007) (affirming grant of summary judgment without discovery where plaintiff

"failed to identify any facts essential to his opposition that were not already available to him."); *Cunningham v. Kane*, No. 9:16-3647-RMG, 2018 WL 1069148, at *1 (D.S.C. Feb. 23, 2018) (granting summary judgment prior to discovery where "it is clear as a matter of law that he is not entitled to the issuance of a writ of mandamus.... No amount of discovery will alter this conclusion."). The dispositive documents, such as the insurance policies, the reservation of rights letter and the complaint in the Underlying Case, are all available to the Court and are in the record in connection with this motion and other filings. No amount of discovery will alter the legal conclusions based on these documents.

Defendants further allege that the Plaintiff has "failed to identify admissible evidence to establish the operative insurance policies." (Dkt. No. 21 at 5.) Defendants focus on the fact that the insurance policies attached to the complaint are not certified. (*Id.*) However, Plaintiff's reply provided the Court with certified copies of the operative insurance policies, which are otherwise identical to the policies attached in the Complaint. (Dkt. Nos. 24-1 at 9, 24-2 at 3.) While Defendants focus on the difference of two numbers on the insurance forms, 55300 versus 55003, the certified CGL coverage form clearly states that "55300" is a "form[] that appl[ies] to this coverage." (Dkt. Nos. 24-1 at 10; 24-2 at 4.) That certified Form 55300 details the CGL coverage at issue here. Defendants further argue that Plaintiff provided no evidence of the reservation of rights letter in their complaint or motion. (Dkt. No. 20 at 3, 7.) However, the reservation of rights letter was included with Defendants' Answer, and both parties referred to it extensively through their briefing on this motion. (Dkt. Nos. 21 at 3 – 4, 24 at 6.) Therefore, Plaintiff has provided admissible evidence supporting their motion for summary judgment.

**B.    Reservation of Rights Letter**

Defendants allege that Owners Insurance failed to timely serve a reservation of rights letter, and that the reservation of rights letter was ultimately inadequate to preserve Owners Insurance's challenges to coverage. (Dkt. No. 20 at 7 – 9.) Defendants' arguments are unpersuasive.

The Underlying Case was filed on August 18, 2016, Owners Insurance provided an attorney by January 6, 2017, and the reservation of rights letter was sent no later than November 7, 2017. Furthermore, Defendants were aware of Plaintiff's position regarding the lack of coverage no later than September 26, 2017, when the summons was returned as executed for this action. (Dkt. No. 7.) Defendants argue that Owners Insurance's delay in sending a reservation of rights letter constitutes waiver and estops Owners Insurance from challenging coverage. Defendants cite a single case from South Carolina to support this position, *Northwestern Nat. Ins. Co. v. R.S. Armstrong & Bros. Co.*, 627 F. Supp. 951, 954 (D.S.C. 1985). However, *Northwestern* was decided under Georgia law and does not affect the resolution of this case

"South Carolina courts have repeatedly and explicitly held that '[w]aiver cannot create coverage and cannot bring into existence something not covered in the policy.'" *Liberty Mut. Ins. Co. v. Westport Ins. Corp.*, 664 F. Supp. 2d 587, 594 (D.S.C. 2009) (citation omitted). While some South Carolina courts have applied equitable estoppel to compel coverage under an insurance policy, that principle does not apply here. Importantly, estoppel requires a party to demonstrate detrimental reliance on a party's "representations or conduct." *Id.* Defendants fail to allege or demonstrate that they detrimentally relied on Owners Insurance providing a defense attorney and instead rely on the passage of time between Plaintiff providing counsel and the reservation of rights letter. (Dkt. No. 21 at 8.) This argument has previously been rejected by this Court. *See Liberty Mut. Ins.*, 664 F. Supp. 2d at 595 ("by focusing exclusively on the time lapse, [p]laintiff seems to fundamentally misunderstand the concept of detrimental reliance."). *See also Peak Prop. & Cas.*

*Ins. Corp. v. Davis*, No. CA 3:12-1689-JFA, 2013 WL 1182679, at *5 (D.S.C. Mar. 21, 2013) (denying coverage under estoppel theory where reservation of rights letter was sent approximately five years after the underlying accident). Here, the attorney provided worked for the Defendants, and while Defendants will suffer a loss if the insurance policy does not cover their claims, that damage does not come *because* they relied on Plaintiff's defense of the claim but rather because World End Imports filed suit and because Defendants agreed to settle the Underlying Case.[3]

Defendants next argue that the reservation of rights letter failed to give proper notice that Owners Insurance intended to assert defenses to coverage. (Dkt. No. 21 at 9.) Defendants focus on the fact that the reservation of rights letter stated that "the entire premise of the Lawsuit...relates to claims for trademark infringement[,]" and the Underlying Case involved copyright claims rather than trademark claims. (*Id.*; Dkt. No. 20-3 at 6.) Therefore, Defendants argue, the reservation of rights was ineffective because "[g]rounds not identified in the reservation of rights may not be asserted later by the insurer." *Harleysville Grp. Ins. v. Heritage Communities, Inc.*, 420 S.C. 321, 339, 803 S.E.2d 288, 298 (2017) (citations omitted). However, *Harleysville* is inapplicable here as the grounds for the reservation of rights clearly were asserted in the letter. Specifically, the letter stated that Plaintiff did not "believe that an 'advertising injury'...has been alleged[,]" and that "exclusion[] (i) ...appl[ies] to the loss and may serve as a bar to this claim. (Dkt. No. 20-3.) Exclusion (i) excludes from coverage " "advertising injuries...[a]rising out of the infringement of copyright, patent, 'trademark', trade secret or other intellectual property rights." The letter therefore clearly does incorporate a reservation of rights for copyright claims.

---

[3] Furthermore, cases where South Carolina courts apply estoppel often involve an insurer misleading the insured. *See, e.g. Jost v. Equitable Life Assur. Soc. of U.S.*, 248 S.E.2d 778 (S.C. 1978) (applying estoppel where insurer collected premiums even after knowing coverage expired); *Pitts v. New York Life Ins. Co.*, 247 S.C. 545, 551, 148 S.E.2d 369, 371 (1966) (applying estoppel where insurer demanded and accepted premiums even after insurer knew coverage expired).

Therefore, Plaintiff's claims are neither waived nor estopped, and the reservation of rights letter clearly identified the grounds for the reservation of rights.

### C. Coverage Under the Insurance Policies

Finally, Defendants argue that the complaint in the Underlying Case alleged an "advertising injury" as defined by the CGL. (Dkt. No. 21 at 9.) As a preliminary matter, the duty to defend claims are moot, as Plaintiff provided representation and the Underlying Case has settled.

Under South Carolina law, insurance policies are subject to the general rules of contract construction. *Nationwide Mutual Ins. Co. v. Commercial Bank*, 479 S.E.2d 524 (S.C. 1996). Where the policy terms are ambiguous, conflicting, or capable of multiple reasonable interpretations, the interpretation most favorable to the insured will be adopted. *See Diamond State Ins. Co. v. Homestead Indus. Inc.*, 456 S.E.2d 912 (S.C. 1995); *State Farm Fire & Cas. Co. v. Barrett*, 530 S.E.2d 132, 135 (S.C. Ct. App. 2000). Where there are exclusions to the policy, the insurance company "bears the burden of establishing the exclusion's applicability." *Owners Ins. Co. v. Clayton*, 614 S.E.2d 611, 614 (S.C. 2005.)

The CGL requires an "advertising injury" to be "in [the insured's] advertisement," and the exclusions explicitly remove from coverage "advertising injuries... [a]rising out of the infringement of copyright, patent, 'trademark', trade secret or other intellectual property rights." (Dkt. No. 24-1 at 31 – 32.) Copyright infringement is not one of the offenses listed under the policy and the Underlying Case was solely brought as a copyright action unrelated to any advertisements. The alleged infringement is therefore not covered by the CGL.

Furthermore, courts have held that even if an alleged offense is covered by an insurance policy as an advertising injury, "a second condition must be found to exist, namely the injury caused by the predicate offense must result from advertising." *St. Paul Fire & Marine Ins. Co. v.*

*Advanced Interventional Sys., Inc.*, 824 F. Supp. 583, 585 (E.D. Va. 1993), *aff'd*, 21 F.3d 424 (4th Cir. 1994) (holding that "direct infringement claim does not fall within the policy's coverage merely because the infringing device may have been advertised by [defendant]."). *See also Ekco Grp., Inc. v. Travelers Indem. Co. of Illinois*, 273 F.3d 409, 415 (1st Cir. 2001) ("there must be some causal connection running from the offense through the advertising to the injury"); *Delta Computer Corp. v. Frank*, 196 F.3d 589, 591 (5th Cir. 1999) ("there must be a connection between the copyright claims and the insured's advertising activity."). Defendants cannot demonstrate any causal connection. The Complaint in the Underlying Case merely alleges that the infringing designs were "offered for sale" on Defendants' website, and were "displayed and sold." (Dkt. No. 8-1 at ¶¶ 26, 31, 32.) As in *St. Paul Fire,* the insurance policy here does not provide coverage for such direct copyright infringement claims where the only alleged causal connection is that the items may have been advertised. Therefore, Plaintiffs has no duty to indemnify or provide coverage to Defendants in the Underlying Case.

### IV.  Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for summary judgment (Dkt. No. 14) and **DECLARES** that the operative insurance policies provide no coverage for the Underlying Case and Owners Insurance is not obligated to indemnify Defendants Cruz Accessories a/k/a H&C Corp. and Michael Summer.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

September 26, 2018
Charleston, South Carolina